UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AGIOS MIXAEL, LLC and
GOOD GREEK FRANCHISES, LLC

     Plaintiffs.                         CASE NO.

v.

ALL ABOUT MOVING TAMPA
BAY, INC., a Florida corporation,
PHILLIP DIAMOND, MELISIA
DIAMOND, and DOES 1-10,

     Defendants.

_____/

## **COMPLAINT**

Plaintiffs, Agios, Mixael, LLC ("Agios") and Good Greek Franchises, LLC ("Good Greek") (collectively, "Plaintiffs"), hereby file this Complaint against Defendants, All About Moving Tampa Bay, Inc. ("All About Moving Tampa Bay"), its identifiable principles Phillip Diamond and Melisia Diamond, and Does 1-10 (collectively, "Defendants"). In support thereof, Plaintiffs allege as follows:

**INTRODUCTION**

1.      This case concerns a superhero (left) and an impostor (right):

 

2.      Plaintiff Agios is the owner of all right, title and interest in and to the distinctive and famous "Superhero Movers" service mark and "Spero the Hero" logos, which, via Plaintiffs' predecessors in interest, they have used in connection with their provision of moving and storage services across the United States since at least as early as January 1, 2015.

3.      The "Superhero Movers" service mark, the "Spero the Hero" logos, and the superhero theme embody the very essence of Plaintiffs' business model and brand.   These trademarks and their thematic "superhero" elements are ubiquitous and inseparable from Plaintiffs' identity and the services they offer.

4. Since at least as early as January 2015, Plaintiffs and their predecessors in interest have used their trademarks prominently on their website, moving trucks, advertising materials, radio advertisements, as well as on television just prior to and during prime time sporting events.

5. Defendant All About Moving Tampa Bay, is a moving company formed on or about March 18, 2016. Defendants Phillip Diamond, Melisia Diamond, and Does 1-10 direct and authorize All About Moving Tampa Bay's business activities. Defendants initially used little to no branding to advertise their services. Many of their business vehicles were nondescript or contained rudimentary labeling.

6. Seeking to capitalize on Plaintiffs' deep market penetration and high consumer brand recognition in the State of Florida and nationwide, Defendants in 2020 began copying critical aspects of Plaintiffs' marks, adopted confusingly similar marks and logos, and continue to use such marks and logos to this day.

7. Specifically, Defendants adopted and began using the confusingly similar mark "The Moving Superheros" (sic) and a "superhero" logo that appears strikingly similar to Plaintiffs' "Spero the Hero" logo.

8. Plaintiffs have no objection to Defendants' provision of moving and storage services in the Tampa Bay area or anywhere else, but Defendants cannot use service marks, logos or slogans that result in a likelihood of consumer confusion and false association with the Plaintiffs.

9.    Despite repeated requests from Plaintiffs, Defendants have refused to adopt their own distinctive branding.  Instead, Defendants continue to use marks confusingly similar to Plaintiffs'.

10.    Defendants' actions mislead and confuse consumers into believing that Defendants are associated with Plaintiffs.  Defendants have unduly benefited from the extensive goodwill Plaintiffs' marks have in the community and from Plaintiffs' extensive advertising efforts, and Defendants will continue to do so unless enjoined.

11.    Accordingly, Plaintiffs have been forced to file this action to protect Plaintiffs' marks from infringement and unfair competition, and to protect the public from the likelihood of confusion.

## THE PARTIES

12.    Agios is a Florida limited liability company, with its principal place of business in Jupiter, Florida.

13.    Agios is the registered owner of the famous "Superhero Movers®" slogan and the famous "Spero the Hero®" logos.

14.    Good Greek Franchises is the exclusive licensee of the distinctive and famous "Superhero Movers" mark and "Spero the Hero" logos.

15.    All About Moving Tampa Bay is a Florida for-profit corporation, formed on March 18, 2016, with a principal place of business in Pinellas County, Florida

16.     Phillip Diamond is an officer and a vice president of All About Moving Tampa Bay.  Phillip Diamond is a resident of Pinellas County, Florida.

17.     Melisia Diamond is an officer and the president of All About Moving Tampa Bay.  Melisia Diamond is a resident of Pinellas County, Florida.

18.     Does 1-10 are currently unknown persons who have authorized, directed, or otherwise participated in All About Moving Tampa Bay's infringing activities.

## JURISDICTION AND VENUE

19.     This is a civil action against the Defendants for deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act (Florida Statute § 501.201 et seq.) and for trademark infringement under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*., and copyright infringement under the Copyright Act, 17 U.S.C. § 501 *et seq*.

20.     The amount in controversy exceeds the sum of $75,000.

21.     The Court has jurisdiction over the subject matter of this action pursuant to  Section 39 of the Lanham Act, 15 U.S.C. § 1121, the U.S. Copyright Act (17 U.S.C. § 501 *et seq*.), 28 U.S.C. §§ 1338(a), 1338(b), and 1367(a).

22.     This Court has jurisdiction over Defendants because they, *inter alia*, (1) transact business in this state; (2) engage in infringing conduct in this state, and/or (3) induce others to engage in infringing conduct in this state.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants reside in this judicial district,

have committed acts of infringement in this State and in this judicial district, and have regular and established business in this District.

## GENERAL ALLEGATIONS

### Good Greek - Good Greek Way - Spero the Hero

24.     Plaintiffs' founder, Spero Georgedakis ("Spero"), is a first generation Greek American who was born in New York City in 1970.  Growing up in New York City, Spero was an accomplished athlete, specifically in the sports of football and track and field. He became known throughout New York City as the "Good Greek" and "Spero the Hero." Spero carried these nicknames with him to college, where he played quarterback for the University at Buffalo.

25.     Choosing to use his physical and athletic abilities for good, and in order to help people and serve the general public, Spero became a police officer during college. In 1990, Spero joined the North Miami Police Department.  In 1992, Spero became a member of the North Miami Police Department's special weapons and tactics (SWAT) unit.

26.     In 1997, Spero resigned from the North Miami Police Department, in good standing, and sought to use his police background in the business world to benefit the general public.

27.     In 1997, Spero joined Maryland based moving company All My Sons Moving and became a business operator.  Spero was a franchise owner in Raleigh, North Carolina for over seventeen years. He supported other franchise owners as twenty-five new locations sprung up around the United States.

28.     During his time as an All My Sons franchise owner, beginning in 2009, Spero deployed the Good Greek name and moniker and started advertising on television, radio, and via print as the "Good Greek."   During this time, Spero learned how to develop and maintain a winning business culture, which he referred to as the "Good Greek Way."

29.     The Good Greek Moving & Storage[1] brand was born in August 2014, when Spero chose to part ways with All My Sons Moving to start his own business, with childhood friend and co-founder John Osorio, as an entrepreneur in the moving and storage industry.   From the beginning, Good Greek Moving & Storage employed The Good Greek Way as its culture.   There are four pillars of The Good Greek Way: faith, honesty, strength and courage.   These four pillars are illustrated by The Good Greek Way badge, which is displayed prominently on Plaintiffs' website and marketing materials:



30.     On January 1, 2015, expanding on The Good Greek Way, Good Greek Moving & Storage deployed Spero the Hero via a marketing campaign through the

---

[1] Good Greek Moving and Storage is the trade name used by Plaintiffs', their predecessors in interest, and franchisees. All of whom are, or were, authorized to use and market the Superhero Trademarks (defined below).

use of superhero iconography and imagery. Spero specifically chose to tie Good Greek Moving & Storage to superhero iconography and imagery because of his physical and athletic exploits dating back to high school, because he protected and served the community as a SWAT police officer for several years, and because he came to understand in his seventeen years of experience in the moving industry that moving is a stressful experience, particularly for children, and a "hero" focused brand would reduce the stress and anxiety associated with moving. Spero the Hero was the perfect mascot for The Good Greek Way.

31.     The development of the superhero mover image was used as a brand identifier to be associated with The Good Greek Way. Good Greek Moving & Storage's superhero iconography and imagery was intended to give people comfort that their move would be a success and that they would be well taken care of, no matter what challenges arose.

32.     In conjunction with superhero iconography and imagery, Good Greek Moving & Storage chose an advertising and marketing plan connected to collegiate and professional sports to associate Good Greek Moving & Storage with physical prowess. In furtherance of Good Greek Moving & Storage's use of superhero iconography and imagery, the "Spero the Hero" mascot and logo was created, using the likeness of Spero with a superhuman persona.

33.     Leadership and a desire to serve are deeply embedded into the Good Greek Moving & Storage culture; it is the Good Greek Way. And, above all else, Good Greek Moving & Storage is founded upon the philosophy of service.  As a

result, Good Greek Moving & Storage, its owners, and its employees, volunteer countless hours to charitable organizations each year.  In addition, Good Greek Moving & Storage licenses the use of its brand and intellectual property to several charitable organizations to help raise money and support their charitable endeavors.  As a result, consumers have come to recognize the Good Greek Moving & Storage trade name as a positive force for good and reliable philanthropic partner.

34.    To perpetuate the Good Greek Way, Good Greek Moving & Storage employs a stringent hiring process, influenced by Spero's prior career as a police officer.  Good Greek Moving & Storage's hiring procedures include extensive background searches, drug screenings, job compatibility evaluations, and extensive training.  As a result, Good Greek Moving and Storage employs a knowledgeable and motivated team who aim to provide an extraordinary moving experience.  Each prospective employee must meet rigorous standards in order to satisfy the qualifications required by Good Greek Moving & Storage.  All applicants must successfully graduate from the Superhero Movers Academy, which consists of 80 hours of training where associates learn and master skills required for each job position, including but not limited, to packing/unpacking, transport, customer service, safety, and driving logistics.  Only associates who successfully master and graduate from the Superhero Movers Academy  training program are approved to work in the field.  Once employed, all employees of the Good Greek Moving &

Storage participate in regular training and team building exercises to ensure they are able to satisfy the Good Greek Moving & Storage's stringent quality standards.

35.     Currently, Good Greek Moving & Storage has facilities in Miami/Ft. Lauderdale, Palm Beach/Treasure Coast, and Tampa/St. Petersburg.  Good Greek Moving & Storage is exploring adding locations nationwide and operations internationally.

36.     Today, Good Greek Moving & Storage operates as a franchise.  Good Greek Franchises is the franchisor and licenses all intellectual property from Agios. Good Greek Moving and Storage also includes a variety of companies operating in other industries including:

- Good Greek Moving & Storage;

- Good Greek Debris and Junk Removal;

- Good Greek Auto Transportation;

- Good Greek Realty;

- Good Greek Insurance;

- Good Greek Lending;

- Good Greek Title; and

- Good Greek Concierge.

37.     Agios is the owner of all right, title and interest in and to the "Good Greek Moving & Storage" trade name, which Agios, via its predecessors in interest has used since at least as early as January 2015 in connection with moving and storage services.

38.     The companies authorized to operate under the Good Greek Moving & Storage trade name offer moving and storage services including, but not limited to, local moving, long distance moving, residential moving, storage, commercial moving, and white-glove moving. Since at least as early as January 2015, Good Greek Moving & Storage has used  superhero iconography and imagery, including the "Spero the Hero" mascot and logo, to promote its moving and storage services, including on moving trucks, promotional items, character actors, company vehicles, billboards, and in advertising (television, radio, digital, and print).

39.     Good Greek Moving & Storage's use of superhero iconography and imagery, including the "Spero the Hero" mascot and logo, has also been deployed in connection with several marketing partnerships. The following is a non-comprehensive list of Good Greek Moving & Storage's marketing partners:

- The Miami Heat;

- The Miami Marlins;

- Inter Miami CF;

- The Tampa Bay Buccaneers;

- The Tampa Bay Rays;

- The Tampa Bay Rowdies;

- The Jupiter Hammerheads;

- The University of Florida;

- The University of Miami;

- The Super Bowl;

- Florida International University;

- The Policeman's Benevolent Association;

- The Homeless Coalition of Palm Beach;

- South Florida Red Cross; and

- SunFest.

40.   Good Greek Moving & Storage spends more than $4,000,000 annually on marketing its products and services.

41.   Good Greek Moving & Storage's success is due primarily to the deep market penetration and widespread consumer recognition of the "Good Greek" brand and Good Greek Moving & Storage's superhero iconography and imagery (including Spero the Hero), trademarks, and copyrights.

42.   Good Greek Moving & Storage's meteoric rise is a direct result of its continuous, deliberate, and extensive efforts to develop widespread consumer recognition of the "Good Greek" brand and superhero iconography and imagery (including Spero the Hero), trademarks, and copyrights.

**Good Greek Superhero Trademarks and Copyrights**

43.   The widespread consumer recognition of the Good Greek Moving & Storage brand is an essential attribute that allows them to outperform their competitors.

44.   Since the inception of the "Good Greek" brand in January 2015, Good Greek Moving & Storage (and all of the companies operating under its name) has

12

owned and used the distinctive famous "Superhero Movers" mark and the "Spero the Hero" word and design marks (collectively, the "<u>Superhero Trademarks</u>").

45.    The Superhero Trademarks draw their inspiration from Spero's childhood nickname of "Spero the Hero" (as detailed above).

46.    Good Greek Moving & Storage's "Spero the Hero" is the flagship emblem of the "Good Greek" brand, re-envisioned as the customer's personal guardian.

47.    Pictured below are just a few variations of the famous "Spero the Hero" logos.



48.    The "Superhero Movers" and "Spero the Hero" marks embody the very essence of Good Greek Moving & Storage's business model and brand. Indeed, the Superhero Trademarks are designed to exemplify the Good Greek Way.

49.     These Superhero Trademarks have become ubiquitous with and inseparable from Good Greek Moving & Storage's identity.

50.    The Superhero Trademarks are displayed prominently on Good Greek Moving & Storage's websites, moving trucks, employee uniforms, advertising materials, promotional materials, billboards, and radio advertisements, and have appeared on television just prior to and during prime-time sporting events.

51.    Good Greek Moving & Storage has created and distributed (both virtually and physically) a series of original "Spero the Hero" comic books.[2] The Spero the Hero comic books have been enjoyed by thousands of children nationwide.  The Spero the Hero comic books were designed to give children confidence that, while moving can be scary, everything will be okay.

52.    Good Greek Moving & Storage also employs a "Spero the Hero" mascot that makes regular live appearances on television, in advertisements, and at in-person community events. The "Spero the Hero" mascot has become a fan favorite among Good Greek's customers and has even developed its own fan following.

53.    Good Greek Moving & Storage  also utilizes the Superhero Movers mark in a musical jingle which has become well-recognized by consumers throughout the State of Florida: "Good Greek Moving & Storage, Your Superhero Movers!"

54.    The Superhero Trademarks are featured in branding campaigns, sponsorships, partnerships with various prominent organizations.

55.    Good Greek Moving & Storage maintains partnerships with numerous high profile sports teams and universities and are well-known to consumers as the "official movers" of the organizations and universities referenced in paragraph 37 above.

---

[2] The "Spero the Hero" comic books can be accessed in digital form through the following link https://sperothehero.com/

56.     As the "official mover" of numerous sports teams, Good Greek Moving & Storage transports the teams' game day equipment to and from each game across the United States.  Good Greek Moving & Storage also handles the total relocation needs of players, coaches, and other personnel involved in these highly esteemed organizations.

57.     Many of the aforementioned universities and organizations' marks are prominently displayed on Good Greek Moving & Storage's moving trucks directly alongside the Superhero Trademarks.

58.     Due to Good Greek Moving & Storage's widespread usage of the Superhero Trademarks since 2015, millions of people associate the Superhero Trademarks and their thematic "superhero" elements with Good Greek Moving & Storage.

59.     In particular, since at least as early as January 2015, Good Greek Moving & Storage has used the Superhero Trademarks to market and promote its moving services throughout the State of Florida and Tampa Bay in the following ways:

     a.  Providing moving and storage services to hundreds of customers in the Tampa Bay area;

     b.  Using vehicles emblazoned with the Superhero Trademarks to provide moving and storage services throughout Tampa Bay;

c.  Distributing thousands of "direct mailers" displaying the Superhero Trademarks to customers and potential customers in the Tampa Bay area;

d.  Directly targeting potential customers in the Tampa Bay area with advertisements containing the Superhero Trademarks through internet adverts, and targeted internet marketing;

e.  Distributing thousands of promotional items displaying the Superhero Trademarks including, but not limited to, children's "superhero" capes and Spero the Hero comic books;

f.  Running advertisements displaying the Superhero Trademarks on prime-time sporting events and other televised shows viewable in the Tampa Bay area.

60.   Since 2015, consumers throughout Florida and in other states have been exposed to a consistent flow of print, radio and television advertising featuring the Superhero Trademarks, which promotions have strongly reinforced consumer association of the Superhero Trademarks with Good Greek Moving & Storage's moving services.

61.   Due to Good Greek Moving & Storage's extensive promotion and longstanding, continuous use of the Superhero Trademarks in connection with their moving and storage services, the Superhero Trademarks are widely recognized by the public and members of the trade as an indicator of the source of Good Greek Moving & Storage's goods and services.

62.    Based on the aforementioned use, Good Greek Moving & Storage owns extensive common law rights in the Superhero Trademarks that extend to the Tampa Bay area, the entire State of Florida, and throughout the United States.

63.    The common law rights in the Superhero Trademarks and associated good will were assigned, or otherwise transferred in full, to Agios prior to the filing of this lawsuit.

64.    Agios, in turn, provided Good Greek Franchises an exclusive license to use the Superhero Trademarks prior to the filing of this lawsuit.

65.    Plaintiffs continue to use the Superhero Trademarks to provide the consuming public the same moving and storage services and same exceptional service that their predecessors in interest provided.

66.    Agios is also the owner of all right, title, and interest in and to the following federal registrations for the Superhero Trademarks, for "moving and storage of goods," in Class 39 (the "Superhero Trademark Registrations"):

| Mark | Reg. No. | Filing Date Reg. Date |
|------|----------|------------------------|
| **SUPERHERO MOVERS** | 5916307 | Sept 24 2018 Nov 19 2019 |
| | 6506403 | Nov 19 2020 Oct 5 2021 |

| Mark | Reg. No. | Filing Date Reg. Date |
|---|---|---|
| | 6506404 | Nov 19 2020 Oct 5 2021 |
| | 6506405 | Nov 19 2020 Oct 5 2021 |
| | 6506406 | Nov 19 2020 Oct 5 2021 |
| **SPERO THE HERO** | 6885618 | Jan 21 2021 Oct 25 2022 |

67.    Downloads from the Trademark Status & Document Retrieval database of the U.S. Patent and Trademark Office ("USPTO") reflecting the current status of the Superhero Registrations are attached hereto as **Exhibit "A**."

68.    The Superhero Trademark Registrations constitute presumptive evidence of Agios's ownership of the Superhero Trademarks, the validity of the

Superhero Trademarks, and of Agios's exclusive right to use the Superhero Trademarks in commerce in connection with the services covered by the Superhero Trademark Registrations.

69.     Agios is also the owner of all right, title, and interest in and to the copyright for the Spero the Hero image and derivations thereof (the "Superhero Copyrighted Works"), reflected in its ownership of U.S. Copyright Reg. Nos. VA 2-324-415, VA 2-324-416, VA 2-324-417, VA 2-324-418, and VA 2-324-419, each with an effective date of registration of October 20, 2022 (the "Superhero Copyright Registrations"). Certificate previews of the Superhero Copyright Registrations, together with copies of the registered works, are attached hereto as **Exhibit B**.

70.     Plaintiffs' Superhero Trademarks symbolize the tremendous goodwill associated with Plaintiffs' moving and storage services.

71.     Plaintiffs expend substantial effort and expense to promote and protect their Superhero Trademarks in the marketplace.

## Defendants' Infringement

72.     Defendant, All About Moving Tampa Bay is a moving company formed on or about March 18, 2016, that provides interstate and intrastate moving services.

73.     For the majority of All About Moving Tampa Bay's existence, it used little to no branding to advertise its services.  Many of its vehicles were nondescript or contained rudimentary labeling.

74.     To illustrate, photographs of Defendants' moving vehicles on August 8, 2018, and December 31, 2018 appear below. These photographs and accompanying dates are posted publicly on Defendants' Facebook page, accessible at facebook.com/allaboutmovingtampabay/ ("Defendants' Facebook Page"):



August 8, 2018:



December 31, 2018:

75.     Defendants are direct competitors to Plaintiffs, as they provide the same type of services (although not the same quality) and compete for the same customers in the same geographical areas, including the Tampa Bay area.

76.     Seeking to capitalize on Plaintiffs' deep market penetration and high consumer brand recognition, Defendants in or about August 2020 began to

appropriate critical aspects of Plaintiffs' Superhero Trademarks and are now using confusingly similar images, marks and branding.

77.    After Plaintiffs began marketing and operating heavily in the Tampa Bay area, Defendants, in or about August 2020, began using the confusingly similar mark "The Moving Superheros" (sic) and a logo of a "superhero" that appears strikingly similar to Plaintiffs' "Spero the Hero." Defendants' confusingly similar "The Moving Superheros" (sic) mark and "superhero" logo are collectively referred to as the "Infringing Marks."

78.    Defendants have used the Infringing Marks in interstate commerce to advertise their services and in conjunction with their provision of services.

79.    Defendants have used the Infringing Marks throughout state of Florida to advertise their services and in conjunction with their provision of services.

80.    Defendants own and operate a universally accessible website, accessible at https://www.allaboutmovingtampabay.com/ ("Defendant's Website"), that publishes the Infringing Marks to the consuming public.

81.    The timeline and evolution of Defendants' infringement is remarkable. Defendants' efforts to copy Plaintiffs' Superhero Trademarks and trade dress accelerated considerably as Plaintiffs' marketing and promotion efforts spread across Florida and beyond.

82.    The images below illustrate the breadth of Defendants' infringement and efforts to misappropriate Plaintiffs' brand. Photographs of Plaintiffs' moving

trucks appear on the left. Photographs of Defendants' various trucks bearing different iterations of the Infringing Marks appear on the right. The photographs of Defendants' vehicles have been taken directly from Defendants' Facebook Page.










83.    Moreover, Defendants' website, since at least as early as August 2020, has utilized the confusingly similar Infringing Marks to falsely advertise and promote itself as a moving company related to the Plaintiffs.

84.    The following banner, which contains the confusingly similar Infringing Marks, is displayed prominently on the homepage of Defendants' Website and Defendants' Facebook Page:



85.     The superhero caricature displayed on Defendants' Website (and also on Defendants' moving vehicles) is strikingly similar to Plaintiffs' Spero the Hero variations, particularly in the form represented below (subject of Copyright Reg. No. VA 2-324-419):



86.     Upon information and belief, Defendants knowingly, willfully, intentionally, and maliciously have acquired, purchased, or otherwise obtained AdWords or other metadata using the confusingly similar marks in an attempt to re-direct internet traffic to its own website and Facebook page, and away from Plaintiffs' website and Facebook page.

87.     Defendants undertook and continue to take these actions for purposes of confusing the marketplace into thinking that Defendants are associated with, or actually are, one of the Plaintiffs or their franchisees.

88.     Defendants intended and continue to intend to take advantage of the expenses Plaintiff incurred through its advertising efforts in the Tampa Bay area and elsewhere, including its extensive television advertisements, association with

professional and collegiate athletics, and interstate recognition of Plaintiffs' Superhero Trademarks.

89.    Defendants do not engage in any independent advertising outside of the confusion created from its infringement of Plaintiffs' Superhero Trademarks.

90.    Defendants' unauthorized use of the Superhero Trademarks, or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, or affiliation, of Defendants' moving and storage services and is likely to falsely suggest a sponsorship, connection, license, or association of between Plaintiffs and Defendants.

91.    Upon information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used a confusingly similar imitation of Plaintiffs' Superhero Trademarks.

92.    Upon information and belief, Philip Diamond, Melisia Diamond, and/or Does 1-10 authorized and directed All About Moving Tampa Bay and/or its employees/independent contractors to engage in each of the aforementioned infringing actions.

93.    Philip Diamond, Melisia Diamond, and/or Does 1-10 possessed actual knowledge that All About Moving Tampa Bay's actions constituted infringement, yet knowingly and substantially participated.

94.    Philip Diamond, Melisia Diamond, and/or Does 1-10 have a financial interest in the activity of All About Moving Tampa Bay and, as a result, have profited from its infringing activities.

95.     All About Moving Tampa Bay is no stranger to infringement and brand dilution.  Indeed, it's very corporate existence is founded on it.  All About Moving Tampa Bay's corporate name is strikingly similar to a well-established moving corporation based out of Tallahassee, Florida named "All About Moving, Inc."  All About Moving, Inc. has operated and provided moving services under its All About Moving tradename since October 4, 2012.

96.     Upon information and belief, neither Defendant All About Moving Tampa Bay, which did not form until 2016, nor any other Defendants are affiliated or associated with All About Moving, Inc., nor are they authorized by All About Moving, Inc. to use the All About Moving tradename in Florida or elsewhere.

97.     Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

98.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their intellectual property rights. Defendants actions have already resulted in lost sales, lost business, and lost profits to Plaintiffs.

99.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Superhero Trademarks, to the great and irreparable injury of Plaintiffs.

100.   Making matters worse, Defendants have recently expanded their operations, under the Infringing Trademarks, into the Orlando market (a key market in which Plaintiffs already operate) .

101.   Plaintiffs have satisfied all conditions precedent to this action.

102.   Plaintiffs have retained the undersigned attorneys and have agreed to pay them their reasonable attorneys' fees.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

103.   Plaintiffs reallege and incorporate paragraphs 1 through 102 as if fully set forth herein.

104.   Plaintiffs offer and sell services in interstate commerce and throughout the State of Florida using the Superhero Trademarks.

105.   Plaintiffs and/or their predecessors established rights in the Superhero Trademarks via use in commerce prior to the date that Defendants adopted their confusingly similar marks.

106.   Plaintiffs possess rights arising through the federal registration of the Superhero Trademarks.

107.   Defendants' use of the confusingly similar Infringing Marks is a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of the Defendants with Plaintiffs, and as to

the origin, sponsorship, or approval of the Defendants' services and commercial activities by Plaintiffs.

108.   Defendants' use of the Infringing Marks is without permission or authority of Plaintiffs and is likely to cause confusion, to cause mistake, and/or to deceive.

109.   Upon information and belief, Defendants were aware of Plaintiffs' rights in and use of the Superhero Trademarks and intentionally disregarded those rights by adopting the Infringing  Marks.

110.   Defendants have unfairly profited from the aforementioned actions at the expense of Plaintiffs.

111.   Plaintiffs have suffered damage to the goodwill associated with its Superhero Trademarks as a result of the aforementioned actions of Defendants.

112.   Defendants' actions have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their Superhero Trademarks.

113.   Plaintiffs' remedy at law is not adequate to compensate it for the damages caused by Defendants.  Accordingly, Plaintiffs are entitled to entry of a temporary restraining order against Defendants and both preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

114.   Because the above-described acts of Defendants were willful, Plaintiffs are entitled to treble damages under 15 U.S.C. § 1117.

115.   This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT II
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
## (AGAINST ALL DEFENDANTS)

116.   Plaintiffs reallege and incorporate paragraphs 1 through 102 as if fully set forth herein.

117.   Defendants engaged in "trade or commerce" as that term is defined under Florida Statute § 501.203(8).

118.   Defendants engaged in unfair methods of competition and unconscionable, deceptive, and unfair acts or practices through their use of the Infringing Marks, which are confusingly similar to Plaintiffs' Superhero Trademarks.

119.   Defendants' unauthorized use of confusingly similar designs and marks to Plaintiffs' Superhero Trademarks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants services are authorized, endorsed, sponsored, or related to Plaintiffs.

120.   Because Defendants are in the same business of moving and storage as Plaintiffs, Defendants knew or should have known that their unauthorized use of Plaintiffs' Superhero Trademarks was an unfair and deceptive act that would harm Plaintiffs, and which would ultimately harm consumers who need moving services.

121.   Defendants' conduct as alleged herein constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce, in violation of Florida Statute § 501.204.

122.   Defendants have unfairly profited from the aforementioned actions.

123.   Plaintiffs have suffered damage to the goodwill associated with its Superhero Trademarks as a result of the aforementioned actions of Defendants.

124.   Plaintiffs are entitled to, among other relief, injunctive relief, and an award of damages pursuant to Florida Statute § 501.211, reasonable attorneys' fees and costs of the action under Florida Statute § 501.2105.

**COUNT III**
**COPYRIGHT INFRINGEMENT**
**(AGAINST ALL DEFENDANTS)**

125.   Plaintiffs reallege and incorporate paragraphs 1 through 102 as if fully set forth herein.

126.   The Superhero Copyrighted Works are original works of art designed in the likeness, spirit, and personal preference of Mr. Georgedakis. The referenced works embody copyrightable subject matter and are entitled to the full protection of U.S. copyright law.

127.   Agios is the exclusive owner of all right, title, and interest in and to the Superhero Copyrighted Works, and Good Greek is its exclusive licensee with respect to the works.

128.   Agios is the exclusive owner of the Superhero Copyright Registrations, each with an effective registration date of October 20, 2022.

129.   Defendants had access to the Superhero Copyrighted Works as they have been prominently displayed on virtually all of Plaintiffs' advertising and have served as the face of Plaintiffs' brand since at least as early as January 1, 2015.

130.   Defendants' infringing "superhero" logo (the "Infringing Work") is substantially similar to certain protected aspects of the Superhero Copyrighted Works, including but not limited to the following:

- o  Spero the Hero's shoe style and shape

- o  Spero the Hero's posture and stance

- o  Spero the Hero's belted speedo

- o  Spero the Hero's superhero cape design

- o  Spero the Hero's arm cuffs

- o  Spero the Hero's distinct caricature-like appearance.

131.   Defendants Infringing Work is derived entirely from the Superhero Copyrighted Works.

132.   By their actions alleged above, at least some of which occurred after October 20, 2022, Defendant has infringed Plaintiffs' exclusive rights in violation of the U.S. Copyright Act, 17 U.S.C. §501 *et seq.*, by reproducing, distributing, and publicly displaying its Infringing Work.

133.   Defendant have unfairly profited from their use of the Superhero Copyrighted Works, and Plaintiffs have suffered considerable damage as the direct and proximate result of the aforementioned actions of Defendants.

134.   As evidenced by the timing of Defendant's adoption of its Infringing Work and its wholesale appropriation of Plaintiffs' superhero branding, Defendants' infringement of the Superhero Copyrighted Works is willful and intentional.

135.   As a direct and proximate result of Defendant's willful infringement of Plaintiffs' exclusive rights in the Superhero Copyrighted Works, Plaintiffs are entitled, at their election, to statutory damages in the amount of $150,000 per copyrighted work infringed, or such other amount as may be found appropriate under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, Plaintiff is entitled to recover damages based on Plaintiffs' lost profits and the disgorgement of Defendants' undue profits in connection with their willful infringement of Plaintiffs' exclusive rights in the Superhero Copyrighted Works, which amounts will be proven at trial.

136.   Plaintiffs are entitled to their costs, including their reasonable attorneys' fees, pursuant to 17 U.S.C § 505.

137.   Defendants' conduct has caused and will continue to cause irreparable injury to Plaintiffs enjoined by this Court, for which injury Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' infringement of Plaintiffs' exclusive rights in the Superhero Copyrighted works.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A. That Defendants pay Plaintiffs all profits made by Defendants as a result of its willful infringement of Plaintiffs' trademark rights and copyrights;

B. That Defendants pay Plaintiffs compensatory damages, pursuant to 15 U.S.C. 1117(a), in a sum to be determined at trial;

C. That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising;

D. That damages be increased to the maximum of three times the compensatory damages, pursuant to 15 U.S.C. Section 1117(a), due to the willful, intentional, and deliberate nature of Defendants' infringement;

E. That this Court adjudge Defendants to have competed unfairly with Plaintiffs in violation of Plaintiffs' rights at common law and in violation of Plaintiffs' rights under the Lanham Act, 15 U.S.C. § 1125(a);

F. That this Court adjudge Defendants' infringing marks caused or will cause a likelihood of confusion with Plaintiffs' Superhero Trademarks;

G. A temporary restraining order, preliminary injunction, and permanent injunction restraining Defendants, its agents, servants, employees, successors and assigns and all others in concert and privity with them:

1. From using Plaintiffs' Superhero Trademarks, or any formative variations or marks that are confusingly similar to Plaintiffs' Superhero Trademarks, in connection with the provision of moving and/or storage services and products;

2. From reproducing, distributing, displaying, or otherwise using the Infringing Work or any work substantially similar to the Superhero Copyrighted Works;

33

3. From otherwise unfairly competing with Plaintiffs or engaging in deceptive acts;

H. An Order requiring Defendants to file with the Court and to account to Plaintiffs for Defendants' sales and profits realized by Defendants through the use of Defendants' infringing marks or any mark that is confusingly similar to Plaintiffs' Superhero Trademarks;

I. An Order directing Defendants to surrender for destruction all products, labels, tags, signs, prints, packages, advertisements, nameplates, vehicle wraps, vehicles, and other materials in its possession or under its control, incorporating or reproducing Plaintiffs' Superhero Trademarks, or any mark that is confusingly similar to Plaintiffs' Superhero Trademarks, pursuant to Section 36 of the Lanham Act (15 U.S.C. § 1118)

J. An Order compelling Defendants to pay Plaintiffs' attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117) and 17 U.S.C. § 505;

K. That Defendants, at Plaintiffs' election, pay Plaintiffs statutory damages of up to $150,000 per copyrighted work willfully infringed, pursuant to 17 U.S.C. § 504(c);

L. That Defendants, at Plaintiffs' election, pay Plaintiffs all actual damages and Defendants' undue profits pursuant to 17 U.S.C. § 504(b), in a sum to be determined at trial;

M. An Order directing that Defendants file with the Court and serve upon Plaintiffs within thirty days after entry of judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above;

N. That Plaintiffs be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Defendants' infringement; and

O. That Plaintiffs be granted such other and additional relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury on all issues so triable.

Date: November 23, 2022        Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/David J. Lisko*
David J. Lisko
Florida Bar No. 0092841
david.lisko@hklaw.com
Paul Punzone
Florida Bar No. 1003511
paul.punzone@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
(813) 227-8500
(813) 229-0134 (fax)

*Attorneys for Plaintiffs*