UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AGIOS MIXAEL, LLC and
GOOD GREEK FRANCHISES, LLC

      Plaintiffs.                     CASE NO. 8:22-cv-2693-CEH-TGW

v.

ALL ABOUT MOVING TAMPA
BAY, INC., a Florida corporation,
PHILLIP DIAMOND, MELISIA
DIAMOND, and DOES 1-10,

      Defendants.
_____/

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, Agios, Mixael, LLC ("Agios") and Good Greek Franchises, LLC ("Good Greek Franchises") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 65(b) of the Federal Rules of Civil Procedure; Local Rule 6.02; the Lanham Act, 15 U.S.C. §§ 1114; and Florida statutory and common law, respectfully moves this Court for a Preliminary Injunction Order enjoining and restraining Defendants, All About Moving Tampa Bay, Inc. ("All About Moving Tampa Bay"), its identifiable principles Phillip Diamond and Melisia Diamond, and Does 1-10 (collectively, "Defendants"), and any related organizations or companies (including parents, officers, directors, agents, owners, employees, representatives, and attorneys and all others acting under, or in concert with, any of them), from:

    a.  Using the source-identifying "Spero the Hero" logos, "Superhero Movers"

slogan, or any of Plaintiffs other registered trademarks or any imitation thereof in connection with Defendants' services;

b. Using "superhero" branding similar to Plaintiffs' in connection with promotion of its services; and

c. Using misleading advertising that suggests endorsement by Plaintiff of Defendant's services when no such endorsement exists.

**LEGAL MEMORANDUM**

## I. __Background__.

### A. __Plaintiffs' Origin__.[1]

"Good Greek Moving & Storage"[2] is the largest independent moving brand in Florida by volume, receipts, and customers served. Ex. A at ¶ 6. The Good Greek Moving and Storage brand comes from humble beginnings, formed in 2014 as single entity in West Palm Beach, Florida. *Id.* Good Greek Moving and Storage experienced immense success, quickly establishing a strong presence throughout the State of Florida and rapidly expanding its operations nationwide. *Id.*

Today, the Good Greek Moving & Storage brand operates as a franchise with multiple entities now authorized to use the "Good Greek Moving and Storage" trade name. *Id* at ¶ 7. Good Greek Moving & Storage maintains permanent facilities

---

[1] The Declaration of Spero Georgedakis is attached hereto in support as Exhibit "A."

[2] Good Greek Moving and Storage is the trade name used by Plaintiffs', their predecessors in interest, and franchisees. All of whom are, or were, authorized to use and market the Superhero Trademarks (defined below).

in Miami/Ft. Lauderdale, Palm Beach/Treasure Coast, and Tampa/St. Petersburg and is exploring adding additional locations nationwide and expanding its operations internationally. *Id.*

Agios currently owns the distinctive and famous "Superhero Movers" service mark and "Spero the Hero" logos (collectively, the "Superhero Trademarks"), which it licenses to Good Greek Franchises. *Id.* at ¶ 25. Plaintiffs and their predecessors in interest have used the Superhero Trademarks in connection with the provision of moving and storage services across the United States, and under the trade name "Good Greek Moving and Storage," since at least as early as January 2015. *Id.* at ¶ 11.

The meteoric rise of the Good Greek Moving & Storage brand is due to Plaintiffs' (and their predecessors') continuous, deliberate, and extensive efforts to develop widespread consumer recognition its superhero iconography and imagery (including Spero the Hero), trademarks, and copyrights. *Id.* at ¶ 8.

B.   The Superhero Trademarks.

Agios is the owner of all right, title, and interest in and to the following federal registrations for the Superhero Trademarks, for "moving and storage of goods," in Class 39 (the "Superhero Trademark Registrations"):

| Mark | Reg. No. | Filing Date Reg. Date |
|---|---|---|
| **SUPERHERO MOVERS** | 5916307 | Sept 24 2018 Nov 19 2019 |

| Mark | Reg. No. | Filing Date Reg. Date |
|---|---|---|
| | 6506403 | Nov 19 2020 Oct 5 2021 |
| | 6506404 | Nov 19 2020 Oct 5 2021 |
| | 6506405 | Nov 19 2020 Oct 5 2021 |
| | 6506406 | Nov 19 2020 Oct 5 2021 |
| **SPERO THE HERO** | 6885618 | Jan 21 2021 Oct 25 2022 |

*Id.* at ¶ 25.

Since at least as early as January 2015, Plaintiffs and their predecessors in

interest (all operating under the Good Greek Moving & Storage trade name) have used the Superhero Marks and associated superhero iconography and imagery to promote their moving and storage services, including on their moving trucks, promotional items, character actors, company vehicles, billboards, and in advertising (television, radio, digital, and print). *Id.* at ¶ 9.

"Spero the Hero" is the flagship emblem of the "Good Greek" brand, envisioned as the customer's personal guardian. *Id.* at ¶ 12. Pictured below are just a few variations of the famous "Spero the Hero" logos:



*Id.*

The "Superhero Movers" and "Spero the Hero" marks embody the very essence of Plaintiffs' business model and brand. *Id.* at ¶ 10. These Superhero Trademarks and their thematic superhero elements have become ubiquitous with and inseparable from Plaintiffs' identity. *Id.*

"Spero the Hero" has its own mascot that makes regular live appearances on television, in advertisements, and at in-person community events. *Id.* at ¶ 13. The "Spero the Hero" mascot has become a fan favorite among Plaintiffs' customers and has even developed its own fan following. *Id.* Plaintiffs' "Spero the Hero" character even has its own series of original comic books. *Id.* at ¶ 14. The

Spero the Hero comic books were designed to give children (and their parents) confidence that, while moving can be a difficult and frightening experience, Good Greek has the ability to "save the day." *Id.* The Spero the Hero comic books have been enjoyed by thousands of children and adults nationwide.  *Id.*

Plaintiffs utilize the Superhero Movers mark in a musical jingle which has become well-recognized by consumers throughout the State of Florida: "Good Greek Moving & Storage, Your Superhero Movers!" *Id.* at ¶ 16.

The Superhero Trademarks are displayed prominently on Plaintiffs' websites, moving trucks, employee uniforms, advertising materials, promotional materials, billboards, radio advertisements, and have appeared on television just prior to and during prime-time sporting events. *Id.* at ¶ 15.

Good Greek Moving & Storage also uses its superhero iconography and imagery, including the Superhero Trademarks, in connection with several marketing partnerships with prominent organizations. *Id.* at ¶ 17. The following is a non-comprehensive list of Good Greek Moving & Storage's marketing partners:

- The Miami Heat;
- The Miami Marlins;
- Inter Miami CF;
- The Tampa Bay Buccaneers;
- The Tampa Bay Rays;
- The Tampa Bay Rowdies;
- The Jupiter Hammerheads;

- The University of Florida;

- The University of Miami;

- The Super Bowl;

- Florida International University;

- The Policeman's Benevolent Association;

- The Homeless Coalition of Palm Beach;

- South Florida Red Cross; and

- SunFest.

*Id.*

Many of the aforementioned universities' and organizations' marks are prominently displayed on Plaintiffs' moving trucks directly alongside the Superhero Trademarks. *Id.* at ¶ 18. The Superhero Trademarks are featured in branding campaigns, sponsorships, partnerships with the aforementioned organizations. *Id.*

In conjunction with superhero iconography and imagery, Plaintiffs chose an advertising and marketing plan connected to collegiate and professional sports to associate its brand with physical prowess. *Id.* at ¶ 19. As the "official mover" of the aforementioned athletics teams, Plaintiffs transport the teams' game day equipment to and from each game across the United States.  Plaintiffs also handle the total relocation needs of players, coaches, and other personnel involved in these highly esteemed organizations. *Id.* at ¶ 20.

Since 2015, consumers throughout Florida and nationwide have been exposed to a consistent flow of print, radio and television advertising featuring the Superhero Trademarks, which promotions have strongly reinforced consumer association of the Superhero Trademarks and associated "superhero" theme with Plaintiffs' moving services. *Id.* at ¶ 21. Indeed, Plaintiffs have invested a significant amount of time and money into advertising and developing its goodwill with the general public, and has sought to ensure that its marks establish its proprietary designation. *Id.* at ¶ 21-22. Plaintiffs expend over **$4 million** per year advertising the Good Greek brand using the Superhero Marks and thematic superhero iconography. *Id.* at ¶ 26.

C.     Defendants' Unlawful and Infringing Conduct.

Defendant, All About Moving Tampa Bay, is a moving company formed on or about March 18, 2016, that provides interstate and intrastate moving services.[3] Defendants are direct competitors to Plaintiffs, as they provide the same type of services (although not the same quality) and compete for the same customers in the same geographical areas, including the Tampa Bay area. *Id.* at ¶ 27.

---

[3] All About Moving Tampa Bay's corporate name is strikingly similar to a dwell-established moving corporation based out of Tallahassee, Florida named "All About Moving, Inc." All About Moving, Inc. has operated and provided moving services under its All About Moving tradename since October 4, 2012. Upon information and belief, neither Defendant All About Moving Tampa Bay, which did not form until 2016, nor any other Defendants, are affiliated or associated with All About Moving, Inc., nor are they authorized by All About Moving, Inc. to use the All About Moving tradename in Florida or elsewhere.

For the majority of All About Moving Tampa Bay's existence, it used little to no branding to advertise its services. *Id.* at ¶ 28. Many of its vehicles were nondescript or contained rudimentary labeling. *Id.* Seeking to capitalize on Plaintiffs' deep market penetration and high consumer brand recognition, Defendants, on or about August 2020, began to appropriate critical aspects of Plaintiffs' Superhero Trademarks and are now using the confusingly similar mark "The Moving Superheros" (sic) and a logo of a "superhero" that appears strikingly similar to Plaintiffs' "Spero the Hero." *Id.* at ¶ 29. Defendants' confusingly similar "The Moving Superheros" (sic) mark and "superhero" logo are collectively referred to as the "Infringing Marks." *Id.*

Defendants have used the Infringing Marks in interstate commerce and throughout state of Florida to advertise their services and have used the Infringing Marks in conjunction with their provision of services. *Id.* at ¶ 30.

Defendants own and operate a universally accessible website, https://www.allaboutmovingtampabay.com ("Defendant's Website"), that has published the Infringing Marks to the consuming public to falsely advertise and promote itself as a moving company related to the Plaintiffs. *Id.* The superhero caricature displayed on Defendants' Website (and also on Defendants' moving vehicles) is strikingly similar to Plaintiffs' Spero the Hero variations. *Id.*

Defendants' unauthorized use of the Superhero Trademarks, or any similar designation thereto, creates a likelihood of confusion as to the source, sponsorship, or affiliation, of Defendants' moving and storage services and is likely to falsely

suggest a sponsorship, connection, license, or association of between Plaintiffs and Defendants. *Id.* at ¶ 32. In addition, Defendants' unauthorized used suggests a false sponsorship with the many organizations Plaintiffs partner with. *Id.*

## II.  **Legal Standard and Argument.**

A preliminary injunction should be imposed if the moving party establishes

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest."

*Levi Strauss & Co.v. Sunrise Int'l Trading, Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995); *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F. 3d 1297, 1300 (11th Cir. 2001).  "To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor," and the Court may rely on affidavits and hearsay.  *Levi Strauss*, 51 F. 3d at 985.

### A.   Likelihood of Success on the Merits.

#### 1.   Plaintiff Has a Substantial Likelihood of Success on Its Federal Trademark Infringement claim.

The Lanham Act [15 U.S.C. § 1051 et seq.] was intended "to protect persons engaged in . . . commerce against unfair competition."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127); see 15 U.S.C. §§ 1114(1), 1117(c), 1125(a). Congress sought to protect both consumers and registered trademark owners in enacting the Lanham Act. *Davidson & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001).  The Lanham Act protects

these expectations by excluding others from using a particular mark and making consumers confident that they can purchase from a particular brand without being confused or misled. *Id.* (citing 15 U.S.C. § 1114(1)). Thus, trademark law ensures consistency for the benefit of consumers. *Id.*

The Lanham Act also protects trademark owners. *Id.* In a trademark infringement action, a plaintiff must show that (1) it owns a valid trademark, and (2) the defendant's mark is likely to cause confusion. *See* 15 U.S.C. § 1114(1). Here, Plaintiffs' rights in the Superhero Trademarks are undisputed, as Plaintiffs are the owner of multiple registrations with the United States Patent and Trademark Office and have worked zealously to protest these rights. These registrations are prima facie evidence of Plaintiffs' ownership and exclusive right to use the Superhero Trademarks in commerce. *See* 15 U.S.C. § 1065.   Registration of a trademark with the United States Patent and Trademark Office constitutes "constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072. Furthermore, "federal registration . . . constitutes constructive use of the mark." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir.2001); 15 U.S.C. § 1057(c); *See e.g, Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1263 (N.D. Fla. 2016) ("Tech is considered to have used the mark "UBER" *everywhere* in the United States as of August 31, 2010 because of its registration of that mark.")

Additionally, Plaintiffs possess common law trademark rights in the Superhero Trademarks due to their continuous use of the marks in commerce since

at least January 2015. Plaintiffs' use occurred throughout the State of Florida including the Tampa Bay Area, and across the nation via radio and television commercials, social media, published materials, its website, its moving trucks, direct mailers, targeted internet advertising, and live appearances by Spero the Hero. Plaintiffs have reached into the homes of customers on the national level, spending over $4 million dollars each year to ensure that the Superhero Marks are well known across the country. *See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989) (under common law, trademark rights are appropriated through actual prior use in commerce); *Contemporary Rest. Concepts, Ltd. v. Las Tapas-Jacksonville, Inc.*, 753 F. Supp. 1560, 1562 (M.D. Fla. 1991) ("Ownership of a mark can be demonstrated by valid registration and actual prior use"). As such, Plaintiffs have created an inseparable connection between the Superhero Trademarks and their thematic superhero elements with its moving and storage services.

Here, Defendants are infringing the Superhero Trademarks by deliberately and willfully creating confusion in the minds of consumers. Defendants use similar marks, features, and logos, and incorporate the same thematic superhero elements as Plaintiffs' famous Superhero Trademarks. In particular, Defendants' "superhero" caricature copies core aspects of Plaintiffs' famous Spero the Hero logo including, Spero the Hero's shoe style and shape, posture and stance, belted speedo, superhero cape design, arm cuffs, and distinct caricature-like appearance. A side-by-side comparison of Plaintiffs' famous Spero the Hero logo and

Defendants' imposter hero follow:

 

In addition, Defendants have directly appropriated Plaintiffs' famous "Superhero Movers" slogan by using the confusingly similar, and phonetically incorrect "Moving Superheroes" (sic) slogan.

Due to Defendants' use of marks confusingly similar to the Superhero Trademarks and their features, logos, and colors, current or potential Good Greek customers may believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some way legitimately connected with Plaintiff. This concern is heightened because both Plaintiffs and Defendants offer moving and storage services and products to customers in the same channels of trade. Defendants' use of marks confusingly similar to the Superhero Trademarks adversely affects Plaintiff's goodwill and creates a likelihood of confusion. Additionally, Defendants have publicly announced their intention to expand their

operations, and begin competing with Plaintiffs, in the Orlando area (a key market for Plaintiffs) using their confusingly similar marks.

Therefore, a substantial risk exists that Defendants will succeed in their trademark infringement and create further confusion in the minds of consumers.

> 2. <u>Plaintiff Has a Substantial Likelihood of Success on Its Florida Deceptive and Unfair Trade Practices Act Claim.</u>

Defendants' wrongful act of using marks confusingly similar to the Superhero Trademarks violates Florida's Deceptive and Unfair Trade Practices Act ("<u>FDUTPA</u>"), which prohibits "unfair competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). FDUTPA's purpose is "to protect the consuming public and legitimate business enterprises" from those who engage in the prohibited acts. *Id.* at § 501.202(2). The statute provides a private right of action for any "person who has suffered a loss as a result of a violation of this part," permitting recovery of "actual damages, plus attorney's fees and court costs," *id.* at § 501.211(2), as well as allowing for declaratory judgments and injunctions, *id.* at § 501.211(1). The statute also provides that "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the non-prevailing party." *Id.* at § 501.2105(1).

Here, Defendants' use of marks confusingly similar to the Superhero Trademarks is likely to make consumers believe there is a connection between Defendants and Plaintiffs and will cause confusing as to the source of Plaintiffs'

and Defendants' goods and services. Defendants' actions have caused and will likely continue to cause confusion, mistake, or deception in the minds of the public, and negatively affect Plaintiffs' goodwill.  Therefore, Plaintiff is likely to succeed on its FDUTPA claim.

      B.    <u>Irreparable Injury</u>.

"[W]hile a court must, in each trademark infringement case, make a finding of irreparable harm before an injunction may issue, that finding will often be made due to the nature of the harm." *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1262 (N.D. Fla. 2016). Indeed, "the harm associated with trademark infringement is typically irreparable in nature." *Id.*

Defendants' use of marks confusingly similar to the Superhero Trademarks degrades Plaintiffs' reputation and is likely to cause confusion, mistake, and deception. Defendants' use of confusingly similar marks affects consumers' decision whether to purchase Plaintiff's products and dilutes the value of Plaintiffs' brand. Consumers also may believe that Defendant is associated with Plaintiff. Unless the Court intervenes to restrain and enjoin Defendants from using Plaintiffs' Superhero Marks, Defendants will continue to cause Plaintiffs to be irreparably harmed and will deprive Plaintiffs of their protected interest in the accumulated goodwill generated by Plaintiffs' promotion, advertising, and sale of its goods and services.  Plaintiffs have no adequate remedy at law to rectify the unquantifiable harm to its goodwill by Defendants' use of Plaintiffs' Superhero Trademark.  The entry of preliminary injunctive relief will not adversely affect any

third parties and will further the public interest by eliminating the confusion, deception, infringement, and the like, as described herein.

      C.     <u>Balance of Hardships</u>

Plaintiffs' loss of goodwill through Defendants' unauthorized use of Plaintiffs' Superhero Trademark outweighs any economic harm to Defendant. Additionally, Defendants' extremely short use of its infringing marks, which, upon information and belief, began in late 2020, further negates any hardship Defendants may claim. Indeed, Defendants use the marks as an advertising ploy. Defendants can still provide the same services, under the same company name, if precluded from further use of the confusingly similar marks.

In sharp contrast, Defendants' aforementioned acts are greatly and irreparably damaging to Plaintiffs unless enjoined by this Court, and Plaintiffs are without an adequate remedy at law. Plaintiffs continue to spend millions of dollars per year promoting the Superhero Trademarks and maintaining the close association between the Superhero Trademarks and the Good Greek Moving and Storage brand. Defendants' continued use of confusingly similar marks greatly weakens the value of Plaintiffs' brand, the impact of Plaintiffs' extensive marketing efforts, and dilutes the association between the Superhero Trademarks and Plaintiffs.

      D.     <u>Public Interest</u>

The injunction is not adverse to the public interest, because rather it is well-settled that the public interest is served by preventing consumer confusion in the

marketplace.  *See Davidoff*, 263 F.3d at 1304; *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1334 (11th Cir. 1996). Indeed, one of Congress' primary purposes in enacting trademark legislation was to make consumers confident that they could purchase brands without being confused or misled. Davidoff, 263 F.3d at 1301 (citing 15 U.S.C. § 1114(1); S. Rep. No. 100-515, at 4 (1988)).  This is the very harm inflicted on the public here. Consumers purchasing products and services are likely to believe that they are purchasing the same services that they would get from Plaintiffs, or are purchasing services that are endorsed by Plaintiffs or related to Plaintiffs, when in fact they are not. In addition, companies and individuals with capital to invest will not inject their capital into the economy by way of building up their business and engaging in marketing efforts if they cannot prevent the infringement of their trademarks. Plaintiffs spend millions of dollars a year building the Good Greek Moving and Storage brand using their distinct, and now famous, superhero theme. Thus, the economy will suffer greatly if companies like the Plaintiffs cannot defend their trademarks.

## III.   Conclusion.

Accordingly, because Plaintiffs have satisfied the four requirements for a preliminary injunction Plaintiffs respectfully request the Court issue an order granting the following relief:

1.     That Defendants, their agents, officers, servants, employees and affiliates, and all those persons in active concert or participation with them, be preliminarily enjoined and restrained from:

a. Using the **Superhero Trademarks,** any imitation of the **Superhero Trademarks,** Defendants' superhero caricature, the slogan "Moving Superheroes" (sic), and any "superhero" based themes, elements, or iconography in connection with Defendants' services and products;

b.  Using misleading advertising that suggests endorsement by Plaintiffs of Defendants' services when no such endorsement exists;

2.     Within thirty (30) days after service of this Order, Defendants shall file with this Court and serve upon Plaintiffs, a report, in writing, and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction and any further orders of this Court;

3.     Defendants and their related organizations, companies, (including parents, agents, employees, representatives, and all others acting under their direction or control or in concert with them, or any of them), shall immediately remove any reference to **Superhero Trademarks,** Defendants' superhero caricature, the slogan "Moving Superheroes" (sic),  and to deliver to Plaintiffs for destruction all advertising materials, promotional materials, flyers, signs, and any and all other materials that bear Defendants' superhero caricature or the slogan "Moving Superheroes" (sic);

4.     Defendants shall remove the superhero caricature, the slogan "Moving Superheroes" (sic), and any other "superhero" based themes, elements,

or iconography from their website, Facebook page, social media accounts, moving vehicles, and any other place where they are displayed;

5.     Plaintiffs shall be awarded their attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and the common law.

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/David J. Lisko*
David J. Lisko
Florida Bar No. 0092841
david.lisko@hklaw.com
Paul Punzone
Florida Bar No. 1003511
paul.punzone@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
(813) 227-8500
(813) 229-0134 (fax)

*Attorneys for Plaintiffs*